# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

KEITH LAMAR BLACKWELL,      )
                                    )
           Plaintiff,          )
                                    )
          v.                  )           No. 4:14CV1061 NCC
                                    )
GERALD KRAMER, et al.,        )
                                    )
          Defendants.        )

## MEMORANDUM AND ORDER

The parties have consented to the jurisdiction of the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 102). Plaintiff, a pretrial detainee at all times relevant to the Complaint and Amended Complaint, brings suit against officials of the St. Louis County Justice Center, as well as medical contractors at the Justice Center, under 42 U.S.C. § 1983 for violations of the 8th and 14th Amendments. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs and subjected him to unlawful conditions of confinement while he was incarcerated at the Justice Center. Defendants Gerald Kramer, Dolores Gunn and Janet Duwe have moved separately for summary judgment on Plaintiff's claims. Additionally, Plaintiff has moved for summary judgment on all of the claims contained in his Amended Complaint. Based on review of the materials before the court, the court finds that Plaintiff's motions for summary judgment against Defendants should be denied. Furthermore, Defendant Kramer's, Gunn's and Duwe's motions for summary judgment will be granted.

## SUMMARY JUDGMENT STANDARD

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1029 (8th Cir. 2000); *Allen v. Entergy Corp.,* 181 F.3d 902, 904 (8th Cir.), *cert. denied,* 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that

create a triable question of fact. *See Crossley v. Georgia-Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

## QUALIFIED IMMUNITY STANDARD

The Supreme Court has explained qualified immunity as follows:

> An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate.

*Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2013).

A court must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.*; *see also Blazek v. City of Iowa City*, 761 F.3d 920, 922-23 (8th Cir. 2014). In considering the question of qualified immunity, a district court must determine which facts are genuinely disputed and view those facts favorable to the non-movant "as long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *Handt v. Lynch*, 681 F.3d 939, 945 (8th Cir. 2012) (citation omitted). "Qualified immunity is an affirmative defense for which the defendant carries the burden of proof. The plaintiff[], however, must demonstrate that the law is clearly established." *Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 679 (8th Cir. 2012) (citation omitted).

# PROCEDURAL BACKGROUND

Plaintiff, Keith Lamar Blackwell, initiated this action pro se on June 6, 2014, against eight (8) correctional and medical officials connected with the St. Louis County Justice Center. At that time, he was being held as a pretrial detainee at the Justice Center.[1]   In his Complaint, Plaintiff alleged that the conditions in the St. Louis County Justice Center were unsanitary and that Defendants had taken action against him in violation of his civil rights under the 4th, 8th and 14th Amendments[2] of the United States Constitution.   Plaintiff also alleged that Defendants had been deliberately indifferent to his serious medical needs.   The Complaint sought monetary and injunctive relief.

Because Plaintiff sought to add additional claims and Defendants to his Complaint, on August 11, 2014, the court ordered Plaintiff to submit an amended complaint on a court-provided form.   Plaintiff filed his Amended Complaint on August 18, 2014. In Plaintiff's verified Amended Complaint, Plaintiff again asserted claims against eleven (11) named correctional and medical officials connected with the St. Louis County Justice Center.   Plaintiff alleged that the conditions in the St. Louis County Justice Center were unsanitary and that defendants had taken action against him in violation of his civil rights under the 1th, 8th and 14th Amendments of the United States Constitution.   Plaintiff also alleged that the named Defendants had been deliberately indifferent to his serious medical needs.   The verified Amended Complaint once again sought monetary and injunctive relief.

---

[1] Plaintiff is currently being held in the United States Penitentiary in Lompoc, California.

[2] Plaintiff also claimed that his 9th Amendment right to be free from "disparagement" had been violated. Plaintiff had misconstrued the text of the 9th Amendment.   The Amendment states, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."   The court found that Plaintiff could not bring a cause of action for "disparagement" against defendants.

On November 10, 2014, the court reviewed Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and for failure to state a claim upon which relief could be granted. The court dismissed several claims and Defendants pursuant to § 1915. However, the court ordered service of process on Plaintiff's claims against Defendants Dolores Gunn, Gerald Kramer, Fred Rottnek, Philip Wenger, Andrew Moore and Janet Duwe.

Rather than file an answer to Plaintiff's claims, Defendants Gerald Kramer, Dolores Gunn and Janet Duwe immediately filed separate Motions for Summary Judgment after being served with process. *See* Doc. #41, #53 and #56. Defendants Philip Wenger and Fred Rottnek filed separate Answers to Plaintiff's Amended Complaint. *See* Doc. #27 and #40. Plaintiff filed responses to Defendants' Motions for Summary Judgment, while simultaneously moving for summary judgment on his claims against all of the named Defendants. *See* Doc. #62, #67, #68, #70, #75 and #77.

On May 5, 2015, Plaintiff's claims against Andrew Moore were dismissed, without prejudice, due to Plaintiff's failure to provide the court with an address at which Defendant Moore could be served. *See* Fed.R.Civ.P. 4(m).

## FACTUAL BACKGROUND

Plaintiff's Amended Complaint asserts that plaintiff suffers from the following medical conditions: chronic obstructive pulmonary disease (COPD); sleep apnea; bleeding from his rectum/colon problems; an unspecified heart disorder; unspecified swelling in his breasts; gastrointestinal reflux disease (GERD); neck and back pain/nerve spasms; "floaters" in his eyes due to glaucoma; and unspecified swelling in his feet/legs.

Plaintiff states that when he entered the Justice Center in November of 2013, he was receiving treatment for some of the aforementioned disorders by way of sleeping with a

continuous positive airway pressure (CPAP) machine, sleeping with a "medical wedge" placed under his mattress, taking the medication Advair and using prescription eye drops.

Plaintiff claims that despite having medical documentation about his need for these treatments, Defendants Dolores Gunn, Dr. Fred Rottnek and Philip Wenger, Pharm. D, have been deliberately indifferent to his serious medical needs by failing to provide him with a "medical wedge," failing to provide him with prescription eye drops and Advair, and failing to act quickly when his CPAP machine broke and needed to be fixed/replaced.

Plaintiff also states that he was denied appropriate treatment for bleeding from his rectum, including suppositories and surgical follow-up, and he asserts that he was not given pain medication for his neck and back pain.

Plaintiff states that when he complained to Defendant Rottnek about the poor medical care, he was told that if he sued him he would be "transferred to the Downtown Justice Center" where Plaintiff would receive "real deliberate indifference."

Plaintiff next asserts that Janet Duwe, the nurse on duty between the hours of 1:00 am and 6:00 am on August 1, 2014, was deliberately indifferent to his serious medical needs when his CPAP machine malfunctioned while he was sleeping and he awoke to serious breathing problems and a coughing fit. Plaintiff asserts that when he sought assistance from Defendant Duwe, she told him that he would be fine until shift change, without assessing his medical condition. Plaintiff states that he continued to cough and choke through the night as a result of his broken machine.

Plaintiff claims that Defendant Kramer, the Floor Manager on 7D, was aware of and had taken his complaints regarding, the unlawful conditions of confinement at the Justice Center. Plaintiff asserts that Kramer knew that the food is served on "dirty trays," and that the showers

were not properly cleaned, that they contained mold and mildew, and that the sheets and towels that contained mold and mildew were not properly cleaned between each use by the inmates. Plaintiff states that Defendant Kramer is also aware that the showers and toilets had not been cleaned properly and resulted in foot infections. Plaintiff asserts that these conditions have resulted in adverse medical consequences for himself and other inmates at the Justice Center.

Plaintiff became an inmate at the Justice Center on November 21, 2013 and was transferred from the Justice Center on or about October 20, 2014.

## DISCUSSION

### 1.   Denial of Medical Care

In the Amended Complaint, Plaintiff alleges that Defendants Gunn, Rottnek and Wenger were deliberately indifferent to his serious medical needs when they failed to provide him with a "medical wedge," failed to provide him with prescription eye drops and Advair, and failed to act quickly when his CPAP machine broke and needed to be fixed/replaced. Plaintiff also alleges that these Defendants were deliberately indifferent to his medical needs when he reported he needed treatment for bleeding from his rectum, and he asserts that he was not given pain medication for his neck and back pain.

Plaintiff additionally claims that Defendant Duwe was deliberately indifferent to his need for medical care on one particular night at the Justice Center (August 1, 2014) when his CPAP machine broke and he started suffering from respiratory distress. He states that Duwe was the nurse on duty on that evening and she failed to examine either him or the machine despite his report to the correctional officers on duty (and their relay of the message to Duwe over the phone) that he had a broken machine and he was having difficulty breathing.

As noted above, Defendants Duwe and Gunn have moved for summary judgment on Plaintiff's medical claims against them, while Plaintiff has moved for summary judgment on his claims against all five of the medical Defendants.

The United States Court of Appeals for the Eighth Circuit applies "the same 'deliberate indifference' standard to pretrial detainees as is applied to Eighth Amendment claims made by convicted inmates." *Vaughn v. Greene Cnty, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006). The Eighth Circuit further holds:

> Under this standard, an official is deliberately indifferent (reckless) if he disregards a known risk to a prisoner's health. To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk. Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it.

*Id.* (citations and quotations omitted).

"Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed. Additionally, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Vaughn*, 438 F.3d at 850.

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Cambreros v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Denial of medical care that results in "unnecessary suffering is inconsistent with contemporary standards of decency" and violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

## A. Defendant Gunn

Defendant Dolores Gunn asserts that she is entitled to summary judgment on Plaintiff's medical mistreatment claims because she did not have any personal interaction with Plaintiff relating to his medical needs. Defendant states that she acts as the Director of the Department of Health and is responsible for overseeing medical staff and for promulgating rules, policies and procedures. She states that she never had any contact with Plaintiff regarding any of his grievances, and she did not make any determinations relating to Plaintiff's medical care.

Defendant Gunn points out that although Plaintiff asserts in a conclusory statement in his verified Complaint that he included information relating to his medical issues in a grievance to Defendant Gunn in May or June of 2014, he did not attach any such grievance to his Amended Complaint, even though he attached other grievances to the pleading. Finally, Defendant Gunn states in an affidavit attached to her summary judgment motion that she had no knowledge of Plaintiff's medical condition, she did not see any of Plaintiff's complaints or grievances relating to his medical issues and she did not consult with Plaintiff's physicians regarding to his care.

Rather than claim in his response brief that he actually complained to Defendant Gunn, Plaintiff asserts that Defendant Gunn should be held liable for deliberate indifference to his medical needs because she was "in charge" of approving "care treatments" and "medications" for inmates at the Justice Center. Plaintiff's arguments sound in respondeat superior, which is unavailable under §1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for

incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

In the instant action, Plaintiff has not set forth any evidence, other than his own conclusory statements, indicating that Defendant Gunn was directly involved in or personally responsible for the alleged violations of his constitutional rights. He has not produced copies of any grievances submitted to Defendant Gunn, nor has he submitted factual statements relating to dates, times or information contained in written or verbal statements given or told to Defendant Gunn. Conclusory statements relating to supposed contacts Plaintiff believes he might have had with Defendant, without more detailed information, are simply not enough to survive summary judgment. *See Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993) (self-serving, conclusory statements without support are not sufficient to defeat summary judgment). As such, Defendant Gunn's motion for summary judgment will be granted. *See also*, *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983). Plaintiff's competing motion for summary judgment will, therefore, be denied.

### B. Defendant Duwe

Defendant Duwe asserts that she should be entitled to summary judgment on Plaintiff's medical claim against her because she never saw Plaintiff in person on the evening of August 1, 2014, and it was her understanding that the only issue he was having on that evening was a smoking CPAP machine. In other words, Defendant Duwe states that she was the "on call"

nurse that evening and that she was merely told by the correctional officer who called her on the telephone that Plaintiff's CPAP machine was broken and smoking, so she told the officer over the phone to turn it off.

In her affidavit, Defendant Duwe testifies that she was never told that Plaintiff was "coughing or choking or having trouble breathing" or in any way suffering from a physical issue. Defendant Duwe states that had she known Plaintiff was suffering from a physical issue she would have come to the Justice Center to examine Plaintiff in person.

Although Plaintiff makes much of the fact that Defendant Duwe knew that Plaintiff suffered from sleep apnea and, thus, should have come to examine him that evening. Defendant Duwe states that it is her understanding that many persons with sleep apnea are able to sleep without a CPAP machine and are able to increase air pressure in their lungs by simply elevating their heads higher in the bed. She asserts that she had no information to indicate that Plaintiff could not rest comfortably through the night without his CPAP machine.

Plaintiff has not produced any competing evidence that any negative medical information relating to Plaintiff was given to Defendant Duwe, such that she should have been placed on notice that Plaintiff was suffering from a serious medical need on the night of August 1, 2014. As such, Defendant Duwe is entitled to summary judgment on Plaintiff's claims for deliberate indifference as he cannot prove that she knew he was suffering from a serious medical condition on the night of August 1, 2014 and that she deliberately failed to treat it.

Alternatively, Defendant Duwe is entitled to qualified immunity as to Plaintiff's deliberate indifference claim. Qualified immunity protects a public official from damage actions if her conduct did not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because qualified

immunity is an immunity from suit rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial. *Pearson v. Callahan*, 555 U.S. 223 (2009). Accordingly, the Supreme Court has repeatedly stressed resolving immunity questions at the earliest possible stages in litigation. *Id.* "[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Tolan v. Cotton,* __ U.S. __ , 134 S. Ct. 1861, 1866 (2104)*,* quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002).

Analysis of Defendant Duwe's qualified immunity defense requires the court to conduct a two-step inquiry. One step is a determination of whether the actions of the defendant violated a constitutional or statutory right, and the other is whether on the date of the subject incident, the law was clearly established that the defendant's actions violated the constitution. *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012). Courts may conduct the inquiries in any order, and need not reach a second inquiry if the first is decided in favor of the defendant. *Pearson*, 555 U.S. at 241-42. The court should be mindful of the Supreme Court's pronouncement that "[q]ualified immunity gives government officials room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, __ U.S.__, 132 S. Ct. 1235, 1244 (2012).

As noted above, the court does not believe that Defendant Duwe violated Plaintiff's constitutional rights, as it appears that she had no actual knowledge that he was suffering from a medical issue on the night Plaintiff's CPAP machine broke. As a result, Defendant Duwe is entitled to qualified immunity in this case.

Given the evidence in the record, Defendant Duwe's Motion for Summary Judgment will be granted, while Plaintiff's competing Motion will be denied.

**C. Defendants Rottnek and Wenger**

Plaintiff's request for summary judgment on his remaining claims for deliberate indifference to his serious medical needs, against Defendants Rottnek and Wenger will be denied. At this time, without the benefit of discovery, Plaintiff has not provided the court with sufficient evidence, other than his own conclusory statements, showing that Defendants Rottnek and Wenger intentionally denied or delayed Plaintiff's access to medical care, or intentionally interfered with his medical treatment or with any medication that he was prescribed. Because plaintiff has the burden to do so, his Motion for Summary Judgment must be denied. *See* Fed. R. Civ. P. 56(a) and (e).

For example, in order to prevail on summary judgment for a deliberate indifference claim against Defendants Rottnek and Wenger, Plaintiff would first have to show that he actually suffered from a "diagnosable medical need" requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Camberos,* 73 F.3d at 176 (quoting *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *see also Simmons v. Cook*, 154 F.3d 805, 807–08 (8th Cir. 1997) (quoting *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) ("A medical need is serious if it is obvious to the layperson or supported by medical evidence.").

Although it appears that Defendants have not contested that Plaintiff suffered from sleep apnea, there is a definite dispute in the record as to the other "diseases" or medical needs from which Plaintiff states he suffered, as well as debate as to what the best treatment for each of the "diseases" wase, and whether the treatment was actually provided by Defendants or not. *See, e.g., Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) ("To show deliberate

indifference, [a plaintiff] must prove an objectively serious medical need and that prison officers knew of the need but deliberately disregarded it.").

Defendants Rottnek and Wenger dispute that they failed to treat Plaintiff's medical complaints properly, and they have provided affidavits and certain medical records to bolster their assertions.   Indeed, Plaintiff's own medical records, attached to his memoranda before this court, show that treatment was provided to him at several opportunities while he was housed at the St. Louis County Justice Center.   "[A] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Peitrafeso v. Lawrence County*, *S.D.,* 452 F.3d 978, 983 (8th Cir. 2006).   Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct. *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003).   Rather, the subjective inquiry must show disregard of "a known risk to the inmate's health."   *Gordon*, 454 F.3d at 862 (citing *Olson*, 339 F.3d at 736).   "Whether a prison's medical staff deliberately disregarded the needs of an inmate is a fact-intensive inquiry."   *Nelson v. Shuffman,* 603 F.3d 439, 448 (8th Cir. 2010).   "The inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson*, 603 F.3d at 448.

Plaintiff has failed to meet this evidentiary threshold in this instance.   His request for summary judgment against Defendants Rottnek and Wenger on his claims for deliberate indifference to his medical needs must therefore be denied.

### 2.    Conditions of Confinement Claim Against Defendant Kramer

In the Amended Complaint, Plaintiff states that Defendant Kramer, the Floor Manager on 7D, is aware of and has taken his complaints regarding the unlawful conditions of confinement at

the Justice Center.[3]   Plaintiff asserts that Kramer knows that the food is served on "dirty trays," and that the showers are not properly cleaned and contain mold and mildew, and that the sheets and towels contain mold and mildew and are not properly cleaned between each use by the inmates.   Plaintiff states that Defendant Kramer is also aware that the showers and toilets are not cleaned properly and that this results in foot infections.   Plaintiff asserts generally that these conditions have resulted in adverse medical consequences for himself and other inmates at the Justice Center.

In order to establish an unlawful conditions of confinement claim in violation of the 8th and 14th Amendments, a plaintiff must allege that he has been subjected to "extreme" deprivations and been denied "minimal civilized measure of life's necessities." *See Hudson v. McMillian*, 112 S. Ct. 995, 999–1000 (1992); *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). The focus in a "conditions of confinement" case often falls on the length of exposure to the purported unsanitary conditions and the level of alleged filthiness the inmate was supposedly exposed to.   *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 957 (8th Cir. 1994) (length of time required for conditions to be unconstitutional decreases as level of filthiness increases).

---

[3] Plaintiff attempts to bring forth the claims of other inmates in this action, noting that some of the inmates on his floor developed infections or other health issues as a result of what he believes to be poor conditions of confinement and/or laying on the floor.   A litigant may bring his own claims to federal court without counsel, but not the claims of others.   *See* 28 U.S.C. § 1654; *see also* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 1769.1 ("class representatives cannot appear pro se.").   As there is no evidence that Plaintiff suffered from any health issues from the alleged poor conditions of confinement, nor is there any evidence that Plaintiff had to lay in a pod on the floor of a cell, the court will disregard Plaintiff's statements on these matters. Furthermore, the court will disregard Plaintiff's statements relative to the handicap showers, as Plaintiff has not brought an Americans with Disabilities Act (ADA) claim before this court.

Defendant Kramer, Deputy Superintendent and Unit Manager of the Seventh Floor of the Justice Center, has moved for summary judgment on Plaintiff's conditions of confinement claim, attaching an affidavit to his Motion certifying that, to the best of his knowledge, the showers and food service trays were properly cleaned between each use.

Specifically, Defendant Kramer states that inmates are assigned to clean the showers at the Justice Center twice each day, at approximately 12:30 and again sometime between 8:30 and 10 p.m. He claims that the inmates use brushes and a product called Crew, a non-acid bathroom disinfectant cleaner to clean the showers with. Kramer reports that inmates are required to clean their own individual toilets in their cells with brushes and cleaning solutions that are supplied by the Justice Center.

Kramer asserts that he responds to complaints about cleanliness and regularly walks by the shower area and has never seen any mold on the floor in the shower area where inmates would have to step. He acknowledges that he did at one time notice some mold on grout between tiles in the shower area, but he ordered that these areas be scrubbed by inmates immediately after seeing the mold in those areas.

Kramer reports in his affidavit that in April of 2014, two supervisory Justice Department personnel inspected the showers in Areas 7B and C and found some soap scum on the bottom of the showers, some mold confined to the <u>seams</u> of the showers, especially in the handicap shower, steel plates supporting the handrail with rust build-up, and a need for paint on the vents. As a result of the inspection, a job request was made to have the Department of Public Works remove the rust and paint the steel plates and vents.

Defendant Kramer states that at that time, the inmates were also provided with a more potent disinfectant cleaner called Foamy Q and A to remove any soap scum and residual mold.

16

Kramer states that the structural improvements were made in November of 2014 and that the shower curtains were well cleaned with disinfectant in June of 2014. Kramer states that a drain was fixed in the day room of Unit 7D in June of 2014 as well.

Defendant Kramer states that he did receive a verbal complaint from Plaintiff relating to the cleanliness of the showers and shower curtains, although neither Plaintiff nor Defendant Kramer has indicated the date upon which this complaint occurred. Defendant states that he asked a correctional officer to report back to him on the conditions of the showers after Plaintiff's complaint. Defendant states that Plaintiff never filed a written grievance about the showers, nor did he complain that he was suffering from a medical issue as a result of the cleanliness of the showers or complain about the odors relating to the showers.

Defendant Kramer further states that towels are regularly laundered with a detergent provided to the inmates called Campaign, and clean towels are stacked in a closet for use in the showers. Defendant Kramer states in his affidavit that "inmates are not required to use unwashed, mildewed towels," and that all inmates receive "two clean sheets once a week." In fact, Plaintiff was assigned a third sheet every week because he had an extra mattress that he was using as a wedge.

Last, Defendant Kramer explains that the food trays are run through a dishwasher after each use. He states that the Justice Center was last audited in June 2013 by the American Correctional Association and at that time it met the Association's standards for cleanliness.

In response to Defendant Kramer's affidavit testimony, Plaintiff has responded in a conclusory fashion attempting to refute Defendant Kramer's testimony with his own unbolstered and, at times, unsworn statements. In essence, Plaintiff complains that the disinfectant soap used to clean the showers and the toilets are ineffective, and he asserts that he does not believe

that the soap used for the dishwasher and the washing machine is "industrial grade." In other words, Plaintiff believes that the cleaning supplies given to the inmates for cleaning are insufficient. Plaintiff also complains that the disinfectant he was supposed to use to clean his own toilet in his cell makes it hard for him to breathe, however, he does not comment on whether he reported this information to anyone at the Justice Center. The court notes that Plaintiff has not produced any evidence or competing affidavit testimony showing that the cleaning supplies or daily cleaning routine is insufficient or somehow substandard, such that he and the other inmates in Areas 7B and C were subject to extreme deprivations and denied "minimal civilized measure of life's necessities," such as a clean shower and good and sustainable food.

Without actual evidence to refute Defendant Kramer's testimony, Plaintiff cannot defeat Defendant's summary judgment motion. *See Reed v. Lear Corp.*, 556 F.3d 674, 678 (8th Cir. 2009) ("To overcome a motion for summary judgment, a Plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding the Plaintiff's favor.").

Defendant Kramer has produced enough evidence, by way of his affidavit, to show that none of the conditions to which Plaintiff complains of actually arose to constitutional proportions. Kramer's affidavit shows that the showers were cleaned at least twice per day with some sort of cleaning solvent, and a more potent bathroom cleaner was used in April of 2014, with a vigorous cleaning given to the shower curtains in June of 2014.

In *Whitnack*, the court held that even conditions such as a filthy cell may be tolerable for a few days and yet intolerably cruel for weeks or months. 16 F.3d 954, 957 (8th Cir. 1994); *see also*, *Howard v. Adkison*, 887 F.2d 134 (8th Cir. 1989) (two-year period). Thus, courts have considered a combination of factors, including time and conditions, to decide what level of

unclean conditions are unconstitutional. *See*, *e.g.*, *Tokar v. Armontrout*, 97 F.3d 1078 (8th Cir. 1996).

The court finds that the shower cleaning convention in Plaintiff's housing unit was more than adequate under the Constitution. In *Wishon v. Gammon*, 878 F.2d 446 (8th Cir. 1992), inmates given cleaning supplies three times a week were not subject to unconstitutional conditions. In *Beaulieu v. Ludeman*, 690 F.3d 1017 (8th Cir. 2012), the court specifically held that two daily bathroom and shower cleanings met constitutional standards despite the regular appearance of feces and urine on the floor as a result of some of the detainees' tendency to soil the bathroom area.

The court further notes that Plaintiff has not produced any evidence of a specific length of time that he purportedly suffered from the alleged unsanitary conditions of confinement. As Defendant Kramer has produced evidence that the bathrooms and towels and trays were cleaned daily (or more), the unsanitary conditions could not have lasted more than 24 hours, too short of a time to exceed a due process violation. *See Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996).

Furthermore, Defendant Kramer's affidavit establishes that he cannot be liable for many of the "conditions of confinement claims" of which Plaintiff complains.

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Tribble v. Ark. Dept. of Human Servs.*, 77 F.3d 268, 270 (8th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).

Defendant Kramer states that he had no knowledge of any medical issues pertaining to Plaintiff's feet, and he believed that the food trays and linens were being washed with sufficient frequency and in a reasonably sanitary manner.

Alternatively, the court finds that Defendant Kramer is entitled to qualified immunity as to Plaintiff's conditions of confinement claim. There is simply no evidence that Defendant Kramer personally violated Plaintiff's constitutional rights, and the above-cited authority establishes that Plaintiff was not subjected to unconstitutional conditions as a matter of law.

Defendant Kramer is entitled to summary judgment on Plaintiff's conditions of confinement claim, and Plaintiff's Motion for Summary Judgment against Defendant Kramer must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kramer's Motion for Summary Judgment [Doc. #41] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Summary Judgment related to defendant Kramer [Doc. #62 and #70] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Duwe's Motion for Summary Judgment [Doc. #53] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment related to Defendant Duwe [Doc. #68] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Gunn's Motion for Summary Judgment [Doc. #56] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion related to Defendant Gunn [Doc. #77] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment related to Defendant Rottnek [Doc. #75] is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment related to Defendant Wenger [Doc. #67] is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Defendant Kramer's Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment [Doc. #81] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Kramer's Motion for Leave to Respond to Plaintiff's Motion for Summary Judgment [Doc. #90] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Duwe's Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment [Doc. #93] is **GRANTED**.

A separate Partial Judgment will be entered in accordance with this Memorandum and Order.

Dated this 17th day of July, 2015

                /s// Noelle C. Collins_____
                NOELLE C. COLLINS
                UNITED STATES MAGISTRATE JUDGE