UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KEITH LAMAR BLACKWELL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:14CV1061 NCC |
| PHILIP WENGER and FRED ROTTNEK, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Fred Rottnek's ("Rottnek") Motion for Summary Judgment (Doc. 129), Defendant Philip Wenger's ("Wenger") Motion for Summary Judgment (Doc. 133), and Plaintiff Keith Lamar Blackwell's Motion for Summary Judgment (Doc. 154). The Motions are fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 102). For the following reasons, Defendants' Motions for Summary Judgment will be **GRANTED** and Plaintiff's Motion will be **DENIED**.

## SUMMARY JUDGMENT STANDARD

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the

burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir.), *cert. denied*, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. *See Crossley v. Georgia-Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

**PROCEDURAL BACKGROUND**

Plaintiff Keith Lamar Blackwell ("Blackwell") initiated this *pro se* action on June 6, 2014 against eight (8) correctional and medical officials connected with the St. Louis County Justice

2

Center ("Justice Center"). At that time, he was being held as a pretrial detainee at the Justice Center.[1] In his Complaint, Blackwell alleges that the conditions in the St. Louis County Justice Center were unsanitary and that Defendants took action against him in violation of his civil rights under the 4th, 8th and 14th Amendments[2] of the United States Constitution. Blackwell also alleges that Defendants were deliberately indifferent to his serious medical needs. The Complaint sought monetary and injunctive relief.

Because Blackwell sought to add additional claims and Defendants to his Complaint, on August 11, 2014, the Court ordered Blackwell to submit an amended complaint on a court-provided form. Blackwell filed his Amended Complaint on August 18, 2014. Blackwell's verified Amended Complaint asserted claims against eleven (11) named correctional and medical officials connected with the Justice Center. Blackwell alleged that the conditions in the Justice Center were unsanitary and that Defendants took action against him in violation of his civil rights under the 1st, 8th and 14th Amendments of the United States Constitution. Blackwell also alleged that the named Defendants were deliberately indifferent to his serious medical needs. The verified Amended Complaint sought monetary and injunctive relief.

On November 10, 2014, the Court reviewed Blackwell's Amended Complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and for failure to state a claim upon which

---

[1] Plaintiff is currently housed at the Federal Detention Center in Sheridan, Oregon according to Inmate Locator, https://www.bop.gov/inmateloc/ (last visited September 1, 2016). *See also* Doc. 164 (A Notice of Change of Address listing Blackwell's current address as the Federal Detention Center in Sheridan, Oregon).

[2] Plaintiff also claimed that his 9th Amendment right to be free from "disparagement" had been violated. Plaintiff misconstrued the text of the 9th Amendment. The Amendment states, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The Court found that Plaintiff could not bring a cause of action for "disparagement" against Defendants.

relief could be granted. The Court dismissed several claims and Defendants in accordance with § 1915. However, the Court ordered service of process on Blackwell's claims against Defendants Dolores Gunn, Gerald Kramer, Rottnek, Wenger, Andrew Moore and Janet Duwe.

Rather than file an answer to Blackwell's claims, Defendants Gerald Kramer, Dolores Gunn and Janet Duwe immediately filed separate Motions for Summary Judgment after being served with process (Docs. 41, 53, 56). Defendants Wenger and Rottnek filed separate Answers to Blackwell's Amended Complaint (Docs. 27, 40). Blackwell filed responses to Defendants' Motions for Summary Judgment, while simultaneously moving for summary judgment on his claims against all of the named Defendants (Docs. 62, 67, 68, 70, 75, 77). On May 5, 2015, Blackwell's claims against Andrew Moore were dismissed, without prejudice, due to Blackwell's failure to provide the Court with an address at which Defendant Moore could be served (Doc. 100). On July 17, 2015, the Court granted Defendants Gerald Kramer, Dolores Gunn and Janet Duwe's Motions for Summary Judgment (Doc. 110) and entered Partial Judgment on behalf of these Defendants (Doc. 114).

Defendants Rottnek and Wenger filed Motions for Summary Judgment on November 17, 2015, and December 2, 2015, respectively (Docs. 129, 133). Blackwell responded to Wenger's Motion for Summary Judgment by filing an "Affidavit"[3] (Doc. 145). Blackwell also filed a response to Rottnek's Motion for Summary Judgment (Doc. 147). In support of his response, Blackwell filed another "Affidavit"[4] (*Id.* at 11-13) and a copy of Rottnek's Affidavit (*Id.* at 15-24). Additionally, Blackwell filed a more specific response addressing the medical wedge

---

[3] Blackwell's purported "Affidavit" is not confirmed by oath or affirmation.

[4] This affidavit is also not confirmed by oath or affirmation.

4

issue (Doc. 149) along with a photograph of a medical wedge (Doc. 148). Rottnek and Wenger both replied to Blackwell's various filings (Docs. 152, 153). In his reply, Wenger specifically requested the Court strike Blackwell's Affidavit (Doc. 153 at 5). The Court will deny this request and will treat Blackwell's Affidavit as a supplement to his response.

Thereafter, Blackwell moved for summary judgment against all Defendants[5] (Doc. 154). Wenger filed a response which in part requests the Court strike the motion (Doc. 155). The Court will deny Wenger's request to strike and will address Blackwell's cross Motion for Summary Judgment. Rottnek also responded (Doc. 156). Blackwell subsequently filed a "Motion, Opposition Briefs," a second filing of his Motion for Summary Judgment (Doc. 158). Rottnek and Wenger responded incorporating their prior briefing (Docs. 160, 161), with Wenger again requesting, in part, that the Court strike the filing (Doc. 160). Again, the Court will not strike the supplemental filing, even in consideration of its repetitive nature, but will instead, in an abundance of caution, treat the filing as additional briefing in support of Blackwell's Motion for Summary Judgment.

---

[5] Although Plaintiff's Motion for Summary Judgment addresses his claims against all Defendants, the Court will only consider it as to Defendants Rottnek and Wenger.

## FACTUAL BACKGROUND[6]

Federal inmate Blackwell was housed in the St. Louis County Justice Center ("Justice Center") from November 21, 2013 to November 1, 2014. During his incarceration, Blackwell reported that he was suffering from or had experienced symptoms related to the following medical conditions: chronic obstructive pulmonary disease (COPD)[7]; sleep apnea[8]; glaucoma[9];

---

[6] The facts are taken from Rottnek's Statement of Uncontroverted Material Facts (Doc. 131) and Wenger's Statement of Uncontroverted Material Facts (Doc. 135). Blackwell did not respond to Wenger's Statement of Uncontroverted Material Facts and, although Blackwell responded to Rottnek's Statement of Uncontroverted Material Facts (Doc. 151), his response fails to comply with Local Rule 4.01(E). Local Rule 4.01(E) provides, with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E). As a result of Blackwell's failure to submit a response in compliance with the requirements of Local Rule 4.01(E), Blackwell is deemed to have admitted all facts in Defendants' Statements of Uncontroverted Facts. *Turner v. Shinseki*, 2010 WL 2555114, at *2 (E.D. Mo. June 22, 2010) (citing *Deichmann v. Boeing Co.*, 36 F. Supp. 2d 1166, 1168 (E.D. Mo. 1999)). However, Blackwell's failure to respond properly to Defendants' Motions for Summary Judgment does not mean summary judgment should be automatically granted in favor of Defendants. Even if the facts as alleged by Defendants are not in dispute, those facts still must establish they are entitled to judgment as a matter of law. *Cross v. MHM Corr. Servs., Inc.*, No. 4:11CV1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014).

[7] "Chronic obstructive pulmonary disease (COPD) is a chronic inflammatory lung disease that causes obstructed airflow from the lungs. Symptoms include breathing difficulty, cough, mucus (sputum) production and wheezing. [It is] caused by long-term exposure to irritating gases or particulate matter, most often from cigarette smoke. People with COPD are at increased risk of developing heart disease, lung cancer and a variety of other conditions." COPD, Mayo Clinic,

edema; gastrointestinal problems, including a pre-incarceration history of rectal bleeding; and back and neck pain.

Defendant Rottnek is a licensed medical doctor who offers medical care to inmates incarcerated at the Justice Center (Affidavit of Fred Rottnek ("Rottnek Aff.") ¶ 3, Doc. 131-1). Blackwell received medical care from Rottnek and other health care providers, including Defendant Wenger, during his incarceration at the Justice Center (*Id.* ¶ 2). Wenger is a licensed clinical pharmacist in the State of Missouri (Affidavit of Philip Wenger ("Wenger Aff.") ¶ 1, Doc. 135-1). As a pharmacist, Wenger's involvement with the care and treatment of Blackwell was dependent upon and required the approval, orders and/or prescriptions from a medical doctor (*Id.* ¶ 5).

---

http://www.mayoclinic.org/diseases-conditions/copd/home/ovc-20204882 (last visited September 1, 2016).

[8] "Sleep apnea is a potentially serious sleep disorder in which breathing repeatedly stops and starts. The main types of sleep apnea are:

- Obstructive sleep apnea, the more common form that occurs when throat muscles relax.
- Central sleep apnea, which occurs when your brain doesn't send proper signals to the muscles that control breathing.
- Complex sleep apnea syndrome, also known as treatment-emergent central sleep apnea, occurs when someone has both obstructive sleep apnea and central sleep apnea."

Sleep Apnea, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/sleep-apnea/basics/definition/con-20020286 (last visited July 15, 2016).

[9] "Glaucoma is a group of eye conditions that damage the optic nerve, which is vital to good vision. This damage is often caused by an abnormally high pressure in your eye." Glaucoma, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/glaucoma/basics/definition/con-20024042 (last visited July 15, 2016).

*Treatment for Sleep Apnea*

Shortly after his arrival at the Justice Center, Rottnek provided Blackwell with an additional mattress to use as a medical wedge[10] to prop up the head of his bed (Rottnek Aff. ¶ 13). This was done to help alleviate breathing difficulties related to Blackwell's sleep apnea and his COPD (*Id.*). The Justice Center Medical Staff does not have access to "traditional" medical wedges (*Id.*). In Rottnek's medical opinion and professional judgment, the second folded mattress accomplished the same medical purpose as a traditional wedge (*Id.*).

As part of Blackwell's treatment for his Sleep Apnea, Blackwell used a CPAP machine at night (*Id.* ¶ 7). On several occasions, Blackwell complained about the efficacy of his machine and the mask he used with the machine (*Id.*). In response, Rottnek contacted a Medical West Representative to recalibrate his machine (*Id.* ¶¶ 8-10). On January 10, 2014, an employee from Provider Plus, a Medical Products and Services Company that works with the Justice Center, provided Blackwell with instructions on how to properly use his CPAP machine (*Id.* ¶ 8). At that time, the technician informed Blackwell that his CPAP mask was too big for him (*Id.*). He responded that it was not, denied having any issues using it, and informed the Provider Plus employee that it was working well (*Id.*). Rottnek contacted the U.S. Marshals Service to get approval for a new CPAP mask for Blackwell (*Id.*). Despite complaining about issues with his CPAP mask, Blackwell was observed on numerous occasions using the machine while sleeping without any issue (*Id.*). The medical staff also regularly monitored Blackwell at night to ensure he was not having any breathing difficulties (*Id.*).

---

[10] A medical wedge is a "triangular-shaped foam pad[]" (Rottnek Aff. ¶ 13). *See also* Doc. 148 (Blackwell's submission of a photo of a medical wedge).

On February 10, 2014, Blackwell reported that he believed the settings on his CPAP Machine were too high (*Id.* ¶ 9). As a result, the medical staff called the machine provider's contractor to adjust the settings (*Id.*). The following day, Blackwell reported that the machine was functioning properly, and that he had no other issues (*Id.*). Following reports that his CPAP machine was not working in August 2014, the medical staff again arranged for an evaluation of the machine by Provider Plus on August 29, 2014 (*Id.* ¶ 10; Doc. 8 at 12 (August 2014 Grievance)). The technician informed the staff that the machine had been calibrated correctly, but that Blackwell had not been using it properly (Rottnek Aff. ¶ 10).

*Treatment for COPD*

Blackwell was prescribed both Advair and Spiriva to treat his COPD (*Id.* ¶ 11). He took Advair upon arrival at the Justice Center and started taking Spiriva on November 22, 2013 (*Id.*). Because Blackwell was a federal inmate housed at the Justice Center, in order to refill his prescriptions, Rottnek was required to obtain approval from the U.S. Marshals Service (*Id.*). Neither Rottnek nor any other member of the medical staff has any control over the timing of this approval (*Id.*). As a result of this approval requirement, there was a lapse in Blackwell's treatment with Advair (*Id.* ¶ 12). There was no interruption in Blackwell's treatment with Spiriva, however, and he also received regular nebulizer treatments to improve symptoms related to his COPD (*Id.*). Furthermore, Blackwell was regularly monitored by the nursing staff for signs of distress (*Id.*).

*Treatment for Glaucoma*

Starting on November 21, 2013, Blackwell received one (1) drop of Xalatan daily to treat the intraocular pressure that resulted from his glaucoma (*Id.* ¶ 23). Blackwell was referred to the

Barnes-Jewish Hospital Eye Center ("Barnes") on August 25, 2014, for a glaucoma check-up (*Id.*). Blackwell's treating physician at Barnes recommended that Blackwell stop using Xalatan for two weeks to allow for an accurate intraocular pressure reading during his follow-up appointment on September 4, 2014 (*Id.*). Rottnek followed that recommendation and Blackwell stopped using Xalatan (*Id.*). Blackwell continuously received his Xalatan, except during the two-week period (*Id.*).

*Treatment for Rectal Bleeding*

During his initial intake assessment, Blackwell informed the medical staff that he suffered from a twisted colon and rectal bleeding (*Id.* ¶ 18). The medical staff continued Blackwell's prescription of Prilosec, an antacid (*Id.*). In February 2014, Rottnek submitted to the U.S. Marshals Service a request for a colonoscopy (*Id.* ¶¶ 19-21). On May 2, 2014, Blackwell had a colonoscopy at Barnes Jewish Hospital (*Id.* ¶ 22). The examining physician, Dr. Dayna Early, informed Rottnek that she removed two polyps from his right colon during the procedure (*Id.*). She also indicated that the pathology report showed adenomatous tissue, which is considered precancerous, and recommended a repeat colonoscopy in five years (*Id.*). She prescribed Anusol (pramoxine) suppositories for bleeding episodes as needed (*Id.*). Blackwell did not report any episodes of rectal bleeding after the procedure and, as such, there was no need for use of the prescribed suppositories (*Id.*).

*Treatment for Pain*

Prior to his arrival at the Justice Center, Blackwell was diagnosed with Degenerative Joint Disease of the hip (*Id.* ¶14). To address this pain, on December 11, 2013, Rottnek started Blackwell on 50 mg of the pain medication Tramadol, twice daily as needed (*Id.*). Blackwell's

prescription was subsequently changed to 325 mg of hydrocodone-acetaminophen, three times daily, with an extra tablet at bedtime, for Blackwell's chronic hip pain (*Id.*). Blackwell continued to receive the hydrocodone-acetaminophen until October 7, 2014, when he was briefly restarted on Tramadol because the Justice Center had not received a new supply of hydrocodone-acetaminophen (*Id.*). On December 20, 2013, Rottnek requested an MRI of Blackwell's Lumbar Spine in response to his complaints of chronic hip and back pain (*Id.* ¶ 15). This request was denied by the U.S. Marshals Service due to insufficient documentation of a serious injury or other clinical concerns (*Id.*). On several occasions during his incarceration, Blackwell refused to take any medications, including the hydrocodone-acetaminophen prescribed for his pain (*Id.* ¶ 17).

## DISCUSSION

For medical care to be so inadequate that it violates constitutional rights, the conduct of the prison officials must amount to "deliberate indifference to the serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference has both subjective and objective components. A plaintiff must show (1) that he suffered from an objectively serious medical need and (2) that the prison officials actually knew of, but deliberately disregarded, that need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). To be objectively serious, the medical need must be "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991). Negligence or medical malpractice does not constitute a constitutional violation. *Estelle*, 429 U.S. at 106. "In order to demonstrate that a defendant actually knew of, but deliberately

disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (internal quotation omitted) (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)). If the prison officials knew of a substantial risk to the health or safety of an inmate and responded reasonably, they are free from liability. *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994).

### A. Philip Wenger, PharmD

Blackwell asserts that Wenger abandoned Blackwell's medically necessary treatment plan despite possessing medical documentation from Blackwell's primary physician. In support of his claim, Blackwell cites to *Johnson v. Hay*, 931 F.2d 456 (8th Cir. 1991). In *Johnson*, the Eighth Circuit held that "a prison pharmacist could not intentionally interfere with or fail to carry out treatment prescribed for a prisoner." 931 F.2d at 461. However, Blackwell fails to provide any evidence in support of his claim. In fact, it appears that until recently Blackwell was under the mistaken impression that Wenger was also a medical doctor responsible for his care. *See, e.g.,* Doc. 8 at 6, 10 (referring to Wenger as M.D. Wenger and as a physician). Furthermore, the evidence in the record supports Wenger's assertion that, as a pharmacist, any care or treatment he provided Blackwell was "dependent and required the approval, orders and/or prescriptions of a medical doctor," and that he "promptly and appropriately provided the care and treatment deemed necessary at the time, pursuant to any orders given or prescribed" (Doc. 135-1 at 2). *Ingrassia v. Schafer*, No. 14-3358, 2016 WL 3228409, at *2 (8th Cir. June 13, 2016) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986), *citing* Fed. R. Civ. P. 56(e)). Accordingly, the Court finds that the evidence, viewed in the light most favorable to

Blackwell, demonstrates that there are not any genuine issues of material fact to support that Wenger was deliberately indifferent to Blackwell's serious medical needs in violation of the 8th Amendment.

**B. Dr. Fred Rottnek, M.D.**

Blackwell next asserts that Rottnek was deliberately indifferent to Blackwell's serious medical needs by: (1) failing to provide him with a medical wedge; (2) failing to provide him with prescription eye drops and Advair; (3) failing to act quickly when his CPAP machine broke and needed to be fixed or replaced; (4) denying him the appropriate treatment for bleeding from his rectum, including suppositories and surgical follow-up; and (5) failing to provide him with pain medication for his neck and back pain. Rottnek does not dispute that Blackwell suffered from the alleged serious medical conditions (Doc. 130 at 5). However, Rottnek asserts that he was not deliberately indifferent to any of Blackwell's medical needs.

As a preliminary matter, Blackwell fails to present any evidence in support of his allegations. To the extent Blackwell submitted various exhibits as attachments to his miscellaneous filings,[11] including several medical records, the Court cannot find any discernable support for his allegations. At this stage, Blackwell " 'may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion

---

[11] Attached to his "Affidavit", construed by the Court as a response to Wenger's Motion for Summary Judgment (Doc. 145), Blackwell provides the Court with the following exhibits: a history and physical report dated November 21, 2013 (*Id.* at 12), a copy of Wenger's Pharmacist License (*Id.* at 14), a history and physical report dated December 13, 2013 (*Id.* at 16), letters confirming the insurance preauthorization of a colonoscopy and biopsy, an MRI, and laser surgery of the eye (*Id.* at 19-21), a treatment record dated December 20, 2013 (*Id.* at 22), a copy of Wenger's Affidavit (*Id.* at 24-25), and a letter dated May 12, 2014, from Dr. Dayna Early regarding Blackwell's recent colonoscopy (*Id.* at 27).

13

for summary judgment.'" *Ingrassia,* 2016 WL 3228409, at *2. On the other hand, Rottnek has submitted to the Court a detailed affidavit, attesting to Blackwell's medical treatment during Blackwell's incarceration at the Justice Center. While the Court could find for Rottnek on this basis alone, in the interest of a full judicial review, the Court will evaluate Blackwell's claims on the merits.

Viewing the evidence in the light most favorable to Blackwell, the treatment provided was not criminally reckless and therefore does not rise to the level of deliberate indifference. First, Blackwell asserts that Rottnek was deliberately indifferent by failing to provide him with a medical wedge, a necessary medical device used to address his breathing difficulties resulting from sleep apnea and COPD. Rottnek does not dispute the necessity of a raised sleeping position for Blackwell. However, the medical staff at the Justice Center does not have access to medical wedges (Rottnek Aff. ¶ 13). Instead, the medical staff provided Blackwell with a reasonable alternative, a second mattress, to allow him to prop up the head of his bed and to help alleviate any breathing difficulties (*Id.*). Other Justice Center staff also addressed Blackwell's concerns regarding the lack of a medical wedge (*See, e.g.,* Doc. 8 at 15 (Unit Manager met with Blackwell and provided him additional sheets in response to his complaint regarding his medical wedge)). Furthermore, Blackwell has failed to present any evidence supporting an injury resulting from his receiving an extra mattress in place of a medical wedge. In fact, Blackwell appears to have used the mattress without complaint for several months, from November 2013 until June 2014. To the extent Blackwell asserts back and neck pain caused by his use of an additional mattress as a wedge, the Court finds Rottnek and the medical staff adequately addressed Blackwell's allegations of pain, as discussed in more detail below.

Second, Blackwell asserts that Rottnek was deliberately indifferent by failing to provide him with Advair, a medication used to treat his COPD. When Blackwell arrived at the Justice Center, the medical staff monitored him for the first several days of his confinement because of his respiratory condition (Rottnek Aff. ¶ 12). Blackwell was prescribed both Advair and Spiriva to treat his COPD (*Id.* ¶ 11). Although Rottnek admits that there was a lapse in Blackwell's receipt of Advair, pending authorization from the U.S. Marshals Service, Blackwell received an alternative medication, Spiriva, to treat his COPD (*Id.* ¶12). He also received regular nebulizer treatments (*Id.*).

Third, Blackwell argues that Rottnek was deliberately indifferent by failing to provide him with his prescription eye drops for his glaucoma. However, the record reflects that Blackwell received his glaucoma medication, Xalatan, during the course of his incarceration except for a two-week period and only at the recommendation of a treating physician at the Barnes-Jewish Hospital Eye Center to allow for a more accurate intraocular pressure reading at Blackwell's next appointment (*Id.* ¶ 23).

Fourth, Blackwell asserts that Rottnek was deliberately indifferent by failing to timely act when Blackwell's CPAP machine broke and needed to be fixed or replaced. Blackwell used a CPAP machine at night as a part of his treatment for sleep apnea (*Id.* ¶ 7). Although Blackwell complained about the efficacy of his machine and its mask, the record shows that the medical staff timely contacted the manufacturer on multiple occasions to recalibrate the machine and a medical services company to provide Blackwell with instruction on how to use his machine (*Id.* ¶¶ 7-10). Even after submitting his complaints, Blackwell was observed using the machine

15

without any issue (*Id.* ¶ 8). Furthermore, medical staff regularly monitored Blackwell at night to ensure he was not having any breathing difficulties (*Id.*).

Fifth, Blackwell asserts that Rottnek was deliberately indifferent by denying him the appropriate treatment for bleeding from his rectum, including suppositories and surgical follow-up. At his intake assessment, Blackwell indicated that he had a history of colon issues (*Id.* ¶18). Accordingly, medical staff obtained his current prescription list and continued his treatment of Prilosec, a prescription antacid (*Id.*). Although not corroborated with objective signs or symptoms of distress, when Blackwell complained of colon problems including gas pains, the medical staff provided him with additional medication to help with his gas (*Id.* ¶ 19). Upon further complaint, Rottnek directed the medical staff to contact the U.S. Marshals Service for approval for a colonoscopy and, upon approval, Blackwell received a colonoscopy (*Id.* ¶¶ 21-22). During the colonoscopy, the physician removed two polys from Blackwell's right colon (*Id.* ¶ 22). After further testing, the physician indicated that the pathology report showed adenomatous tissue, considered to be precancerous, and recommended a repeat colonoscopy in five years (*Id.*). She also prescribed Anusol (pramoxine) suppositories for bleeding episodes as needed (*Id.*). Blackwell did not report any further episodes of rectal bleeding and, therefore, the suppositories were not medically necessary (*Id.*).

Finally, Blackwell asserts that Rottnek was deliberately indifferent by failing to provide him with pain medication for his neck and back pain. However, the record reflects that Blackwell received continuous treatment for his complaints of pain during his incarceration at the Justice Center (*Id.* ¶14). Although he refused to take his medication on several occasions, he received a continuous, uninterrupted course of treatment of Tramadol and

16

hydrocodone-acetaminophen (*Id.* ¶¶ 14, 17). Furthermore, Rottnek requested an MRI of Blackwell's lumbar spine, a request that was ultimately denied by the U.S. Marshals Service (*Id.* ¶ 15).

Therefore, the Court finds that the evidence, viewed in the light most favorable to Blackwell, demonstrates that there are not any genuine issues of material fact to support that Rottnek was deliberately indifferent to Blackwell's serious medical needs in violation of the 8th Amendment.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Fred Rottnek's Motion for Summary Judgment (Doc. 129) and Defendant Philip Wenger's Motion for Summary Judgment (Doc. 133) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Keith Blackwell's Motion for Summary Judgment (Doc. 154) is **DENIED**.

**IT IS FURTHER ORDERED** that any remaining pending motions (Docs. 146, 157) are **DENIED, as moot**.

A Judgment shall accompany this Memorandum and Order.

Dated this 1st day of September, 2016.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE